DECISION
This is an appeal by defendant, Raney A. Mease, from a judgment of the Franklin County Court of Common Pleas overruling defendant's motion for leave to file a delayed motion for new trial.
On December 9, 1994, defendant was indicted on one count of involuntary manslaughter, in violation of R.C. 2903.04, one count of aggravated burglary, in violation of R.C. 2911.11, two counts of aggravated robbery, in violation of R.C. 2911.01, two counts of robbery, in violation of R.C. 2911.02 and one count of felonious assault, in violation of R.C. 2903.11. The matter was tried before a jury; the facts adduced at trial were previously set forth by this court in State v.Mease (Dec. 18, 1997), Franklin App. No. 97APA01-92, unreported, as follows:
 The evidence presented at defendant's trial revealed that at approximately 11:30 a.m. on October 19, 1994, Charles Tucker and Kirkland Grantham broke the lock on the front door and entered the home of Johnny Meek intending to steal money and drugs which they believed Meek kept on the premises. In the course of the burglary, Grantham was shot and killed by Meek, and Robert Burse, an individual who was staying with Meek, was shot and wounded by Tucker.
Although several witnesses testified that they saw defendant in the vicinity of Meek's house immediately following the incident, Tucker's trial testimony was the principle evidence implicating defendant in the crime. Specifically, Tucker testified that earlier on the morning of the incident, he and Grantham picked-up defendant in Grantham's girlfriend's car. According to Tucker, when defendant got in the car he produced a .38 caliber handgun with three bullets in it. The three men then drove around and decided that they would go to Meek's house and steal the money and drugs which they had been told Meek kept there. According to Tucker's trial testimony, upon arriving at Meek's house, Tucker kicked in the front door and he and Grantham entered the house. However, Tucker could not say whether defendant had entered the house.
On April 18, 1995, the jury rendered verdicts finding defendant guilty of involuntary manslaughter, aggravated burglary and aggravated robbery. Defendant was sentenced by entry filed April 24, 1995.
Defendant filed an appeal from the trial court's judgment of sentence and conviction. On August 16, 1995, defendant filed a motion for new trial and/or petition for post-conviction relief. The trial court, by decision and entry filed February 22, 1996, overruled defendant's motion for new trial and/or post-conviction relief on the basis that the motion was premature inasmuch as defendant's direct appeal was still pending. By decision rendered on March 14, 1996, this court affirmed the judgment of the trial court.
On March 27, 1996, defendant renewed his motion for new trial and/or petition for post-conviction relief with the trial court. On September 19, 1996, defendant, acting pro se, filed a petition for post-conviction relief. By decision and entry filed on December 23, 1996, the trial court overruled defendant's motion for new trial and dismissed defendant's petitions for post-conviction relief. By decision filed December 31, 1996, this court denied an application for reopening filed by defendant.
Defendant appealed from the trial court's December 23, 1996 judgment. By decision rendered on December 18, 1997, this court affirmed the judgment of the trial court.
On December 26, 1997, defendant filed a petition to set aside his judgment of conviction. By decision and entry filed December 22, 1998, the trial court overruled defendant's petition for post-conviction relief. Defendant appealed from the trial court's entry. By memorandum decision filed September 23, 1999, this court affirmed the judgment of the trial court.
On January 21, 2000, defendant filed a motion for leave to file a delayed motion for new trial. Defendant's motion for new trial was based upon a claim of ineffective assistance of counsel and newly discovered evidence. By decision and entry filed March 2, 2000, the trial court overruled defendant's motion for leave to file a motion for new trial.
On appeal, defendant sets forth the following two assignments of error for review:
 Assignment of error number one: The trial court erred when it denied the appellant's motion for leave to filed delayed motion for new trial on the basis that the appellant was not unavoidably prevented from discovering the newly discovered evidence, and, in finding the affidavit of Charles Tucker was not newly discovered evidence.
Assignment of error number two: The trial court erred when dismissing the appellant's motion for new trial and motion for leave to filed delayed motion for new trial where the misconduct of the prosecuting attorney materially and prejudicially interfered with appellant's fundamental right to a fair and impartial trial as mandated by the Fifth
and Fourteenth Amendments of the United States Constitution and ArticleI, Section 5 and 16 of the Ohio Constitution.
Defendant's assignments of error are interrelated and will be discussed together. Under his first assignment of error, defendant contends that the trial court erred in failing to grant his motion for leave to file a delayed motion for new trial based upon a recanting affidavit of Charles Tucker. Under his second assignment of error, defendant argues that the trial court erred in failing to grant his motion for new trial where the actions of the prosecutor interfered with the defendant's right to a fair trial.
In overruling defendant's motion for leave to file a motion for new trial, the trial court found that defendant's motion was untimely, and that defendant had failed to show that the evidence at issue was newly discovered or that defendant was unavoidably prevented from discovering the evidence.
Motions for new trial in a criminal proceeding are governed by Crim.R. 33. In State v. Mathis (1999), 134 Ohio App.3d 77, 79, the court discussed the requirements under Crim.R. 33(B), stating:
 Under Crim.R. 33(B), if a defendant fails to file a motion for a new trial based on newly discovered evidence within one hundred twenty days of a jury's verdict, he or she must seek leave from the trial court to file a delayed motion. To obtain such leave, the defendant has to demonstrate by clear and convincing proof that he or she was unavoidably prevented from discovering the evidence within the one hundred twenty days. "[A] party is unavoidably prevented from filing a motion for new trial if the party had no knowledge of the existence of the ground supporting the motion for a new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence."
Clear and convincing proof is a measure of proof that is more than a preponderance of the evidence, but less than proof beyond a reasonable doubt: it "`produce[s] in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" Clear and convincing proof requires more than a mere allegation that a defendant has been unavoidably prevented from discovering the evidence he seeks to introduce as support for a new trial. "Where the proof required must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." However, where there is competent and credible evidence supporting the trial court's decision, the appellate court should not substitute its judgment for that of the trial court. (Citations omitted.)
In State v. Petro (1947), 148 Ohio St. 505, the Ohio Supreme Court held in the syllabus that:
 To warrant the granting of a motion for a new trial in a criminal case, based on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence. (State v. Lopa, 96 Ohio St., 410, approved and followed.)
It has been noted that "where a defendant seeks a new trial based upon the recanted testimony of a witness, the court is called upon to determine the credibility of that witness." State v. Walker (1995),101 Ohio App.3d 433, 435. Further, "[r]ecantation by a significant witness does not, as a matter of law, entitle the defendant to a new trial." Id.
As noted under the facts, the jury returned its verdict on April 18, 1995, and defendant did not file his motion for leave to file a delayed motion for new trial until January 21, 2000. Thus, the trial court was required to first determine whether defendant was "unavoidably prevented" from discovering the evidence at issue within one hundred twenty days.
In support of his motion for new trial, defendant submitted the affidavit of Tucker, one of the participants in the incident on October 19, 1994. The trial court, in reviewing the affidavit, noted that the defendant, over the course of three different motions for post-conviction relief, had submitted three separate affidavits from Tucker. Specifically, in the first affidavit, sworn on May 12, 1995, Tucker averred, contrary to his trial testimony, that "Raney Mease did not supply the gun I used in this robbery of Johnny Meeks and did not enter this plan to rob Johnny Meeks." According to Tucker, "[t]he whole idea of placing Raney Mease in this was the work of Columbus Police Detective Kallay." Tucker further averred that "Raney Mease did ride with us to this house on Jefferson Ave. unaware of what was about to happen."
In a second affidavit, sworn on June 19, 1996, Tucker stated that "David Shelton supplied Kirkland Grantham and myself * * * with a .38 revolver which was in a brown paper bag." Tucker further stated in the affidavit that "[t]he only reason I implicated Raney Mease as a guilty actor was because Detective Edward Kallay of the Columbus Police Department told me that he has been wanting Raney Mease's butt."
Following defendant's appeal from the trial court's dismissal of his petitions for post-conviction relief, this court addressed the issue of Tucker's recanted testimony, holding in part:
 In denying defendant's motion for a new trial/petition for postconviction relief, the trial court determined that Tucker's recantation lacked credibility due to its inconsistency with defendant's trial testimony. Specifically, defendant testified at trial that he had never met Charles Tucker prior to seeing him in court. Defendant also explained that his presence in the vicinity of Meek's house at the time of the burglary and shooting was coincidental, as he just happened to be walking by on the way to a friend's house.
It is clear that defendant cannot have been in Grantham's girlfriend's car with Tucker prior to the robbery, as Tucker states, and never have seen Tucker prior to his arrest, as defendant testified at trial. Nor can Tucker's statement that defendant arrived at the scene in Grantham's girlfriend's car be squared with defendant's trial testimony that he arrive[d] there on foot. Because defendant has provided no explanation whatsoever for these fundamental inconsistencies, we cannot say that the trial court was without a reasonable basis or was clearly wrong in overruling defendant's motion for a new trial/petition for postconviction relief on the basis that Tucker's recantation testimony lacked credibility.
Tucker swore to a third affidavit on January 7, 1999, in which he averred for the first time that he told a prosecutor that "it was not Raney Mease who had given me and `Kirk' the gun used in the robbery attempt and that Raney Mease had not played any part in the same." Tucker further stated that he told the prosecutor "that it was not Raney but David Shelton who had supplied the gun and that David had designed the plan to rob the dude Johnny Meek." According to Tucker, he was told by the prosecutor that he would not receive "a favorable recommendation (in regard to the plea agreement) if I did not give the testimony they needed to convict Raney Mease."
In denying defendant's motion for leave to file his motion for new trial, the trial court held that, based on the number of affidavits sworn by Tucker and presented to the court over the years, "this witness and this information has been available to the Defendant for a significant period of time." The court concluded that, "[g]iven the access the Defendant has had to the Affiant and the opportunities the Defendant has had to present this argument for adjudication, the Court cannot find by clear and convincing evidence this averment is newly acquired evidence or that the Defendant was unavoidably prevented from discovering same."
Upon review, we find no error in the trial court's determination that defendant was not unavoidably prevented from discovering the evidence within the one hundred twenty day period. As noted under the facts, the jury rendered its verdict against defendant on April 18, 1995, and defendant submitted Tucker's first affidavit on May 12, 1995, in which Tucker averred that the defendant did not supply the gun used in the crime. Thus, defendant was in communication with one of the state's witnesses shortly after the verdict. The fact that defendant did not know Tucker told the prosecutor that another individual, Shelton, supplied the gun to Tucker, "does not demonstrate how * * * [defendant] was prevented, if he had exercised due diligence and effort, from discovering the statements within one hundred twenty days of the jury's verdict."Mathis, supra, at 80.
Further, even assuming that defendant had presented clear and convincing proof that he was unavoidably prevented from discovering the evidence in a timely manner, we would find that the merits of the motion fail to support a claim of prosecutorial misconduct. As noted by the state, the affidavit of Tucker does not state that the prosecutor told Tucker to lie; rather, the affidavit only indicates that, as part of a plea agreement, Tucker was told that he would receive a favorable sentence if he testified against the defendant. We further note that any potential bias regarding Tucker's testimony, as a result of a plea agreement, could have been the subject of cross-examination at the time Tucker testified at defendant's trial. The record indicates that defense counsel questioned Tucker at trial about his plea agreement, and the fact that Tucker had not been sentenced at the time he testified against defendant.
Based upon the foregoing, we conclude that defendant failed to present sufficient evidence to obtain leave for filing a motion for new trial. Accordingly, defendant's first and second assignments of error are overruled and the judgment of the trial court is hereby affirmed.
 ___________________________ DESHLER, J.
PETREE and McCORMAC, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.